1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    TOMMY TROY GUTIERREZ,                      No.  2:14-cv-1968-KJN

12                 Plaintiff,

13         v.                                    ORDER

14    COMMISSIONER OF SOCIAL
      SECURITY,
15
                     Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

19    ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under

20    Title II of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff

21    principally contends that the Commissioner erred by finding that plaintiff was not disabled from

22    January 8, 2008, plaintiff's alleged disability onset date, through October 26, 2012, the date of the

23    final administrative decision.  (ECF No. 14.)  The Commissioner filed an opposition to plaintiff's

24    motion and a cross-motion for summary judgment.  (ECF No. 15.)  No optional reply brief was

25    filed by plaintiff.

26

27    _____
      [1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and
      both parties voluntarily consented to proceed before a United States Magistrate Judge for all
28    purposes.  (ECF Nos. 8, 11.)

                                                    1

1    For the reasons discussed below, the court GRANTS IN PART plaintiff's motion for

2  summary judgment, DENIES the Commissioner's cross-motion for summary judgment, and

3  remands the action for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

4  I.    BACKGROUND

5    Plaintiff was born on June 2, 1961, has an eighth grade education, is able to communicate

6  in English, and previously worked primarily as a crane operator.[2]  (Administrative Transcript

7  ("AT") 16, 21, 32-33, 122, 242, 491.)  On February 23, 2011, plaintiff applied for DIB, alleging

8  that his disability began on January 8, 2008, and that he was disabled primarily due to a back

9  injury.  (AT 13, 58-59, 149.)  After plaintiff's application was initially partially approved and

10  then denied on reconsideration, plaintiff requested a hearing before an administrative law judge

11  ("ALJ"), which took place on October 2, 2012, and at which plaintiff, represented by an attorney,

12  and a vocational expert ("VE") testified.  (AT 28-56.)  In a decision dated October 26, 2012, the

13  ALJ determined that plaintiff had not been disabled, as defined in the Act, from January 8, 2008,

14  plaintiff's alleged disability onset date, through the date of the ALJ's decision.  (AT 13-22.)  The

15  ALJ's decision became the final decision of the Commissioner when the Appeals Council denied

16  plaintiff's request for review on July 21, 2014.  (AT 1-4.)  Thereafter, plaintiff filed this action in

17  federal district court on August 22, 2014, to obtain judicial review of the Commissioner's final

18  decision.  (ECF No. 1.)

19  II.   ISSUES PRESENTED

20    On appeal, plaintiff contends that the ALJ improperly evaluated the medical opinion

21  evidence.

22  III.  LEGAL STANDARD

23    The court reviews the Commissioner's decision to determine whether (1) it is based on

24  proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

25  as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

26  ───────────────────

27  [2] Because the parties are familiar with the factual background of this case, including plaintiff's
medical history, the court does not exhaustively relate those facts in this order.  The facts related
to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues

28  presented by the parties' respective motions.

1   evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

2   F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

3   mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

4   Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

5   responsible for determining credibility, resolving conflicts in medical testimony, and resolving

6   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The

7   court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

8   interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

9   IV.     DISCUSSION

10          A.      Summary of the ALJ's Findings

11          The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard

12   five-step analytical framework.[3]  As an initial matter, the ALJ noted that plaintiff met the insured

13

14   [3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social
    Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled
15   persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as
    an "inability to engage in any substantial gainful activity" due to "a medically determinable
16   physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel
    five-step sequential evaluation governs eligibility for benefits under both programs.  See 20
17   C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-
    42 (1987).  The following summarizes the sequential evaluation:
18

19          Step one: Is the claimant engaging in substantial gainful activity?  If so, the
            claimant is found not disabled.  If not, proceed to step two.
20

            Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step
21          three.  If not, then a finding of not disabled is appropriate.

22
            Step three: Does the claimant's impairment or combination of impairments meet or
23          equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the
            claimant is automatically determined disabled.  If not, proceed to step four.
24
            Step four:  Is the claimant capable of performing his past relevant work?  If so, the
25          claimant is not disabled.  If not, proceed to step five.

26
            Step five:  Does the claimant have the residual functional capacity to perform any
27          other work?  If so, the claimant is not disabled. If not, the claimant is disabled.

28   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

1    status requirements of the Act for purposes of DIB through June 30, 2013.  (AT 15.)  At the first

2    step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since January

3    8, 2008, plaintiff's alleged disability onset date.  (Id.)  At step two, the ALJ found that plaintiff

4    had the following severe impairments: degenerative disc disease and heart impairment.  (Id.)

5    However, at step three, the ALJ determined that plaintiff did not have an impairment or

6    combination of impairments that met or medically equaled the severity of an impairment listed in

7    20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.)

8         Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity

9    ("RFC") as follows:

10            After careful consideration of the entire record, the undersigned
              finds that the claimant has the residual functional capacity to
11            perform light work as defined in 20 CFR 404.1567(b) as follows:
              simple, routine, repetitive tasks; could sit six hours; stand/walk six
12            hours each with normal breaks; lift/carry 20 pounds occasionally
              and ten pounds frequently; could occasionally climb ladders, ropes
13            and scaffolds; could occasionally stoop, kneel, crouch or crawl.

14   (AT 16.)

15        At step four, the ALJ found that plaintiff was unable to perform any past relevant work.

16   (AT 20.)  However, at step five, the ALJ determined, based on the VE's testimony, that,

17   considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in

18   significant numbers in the national economy that plaintiff could perform.  (AT 21-22.)

19        Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined

20   in the Act, from January 8, 2008, plaintiff's alleged disability onset date, through October 26,

21   2012, the date of the ALJ's decision.  (AT 22.)

22        B.        Plaintiff's Substantive Challenges to the Commissioner's Determinations

23        In this case, plaintiff injured his back at work while lifting heavy equipment on January 8,

24   2008.  (AT 242.)  An MRI study showed a large disc protrusion at level L4-L5 with severe nerve

25   recompression and a transitional vertebral body, and plaintiff ultimately underwent a discectomy

26   _____

27        The claimant bears the burden of proof in the first four steps of the sequential evaluation
     process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
28   evaluation process proceeds to step five.  Id.

1   back surgery in April 2008.  (AT 242, 734.)  Plaintiff testified that his back pain improved after

2   the surgery, but that the improvement was short-lived before the pain became worse again around

3   the end of 2008.  (AT 47.)  All parties agree that plaintiff suffers from a back impairment, but the

4   pertinent question is the degree of plaintiff's symptoms and functional limitations resulting from

5   that impairment.[4]  As noted above, plaintiff contends that the ALJ improperly evaluated the

6   medical opinion evidence in that regard.

7        The weight given to medical opinions depends in part on whether they are proffered by

8   treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195,

9   1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more

10  weight is given to the opinion of a treating professional, who has a greater opportunity to know

11  and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir.

12  1996).

13       To evaluate whether an ALJ properly rejected a medical opinion, in addition to

14  considering its source, the court considers whether (1) contradictory opinions are in the record;

15  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

16  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

17  F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional may be

18  rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating

19  professional's opinion generally is accorded superior weight, if it is contradicted by a supported

20  examining professional's opinion (supported by different independent clinical findings), the ALJ

21  may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

22  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

23  weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ

24  _____

25  [4] Plaintiff also had heart valve replacement surgery in 2000, but testified at the hearing that he did
    not experience any known heart problems after the surgery, that he was not on any heart
26  medications at the time of the hearing, and that a cardiologist told plaintiff in 2008 that he did not
    see any ongoing trouble with plaintiff's heart.  (AT 35-36.)

27  [5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3)
28  nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency;

1   in any event need not give it any weight if it is conclusory and supported by minimal clinical

2   findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory,

3   minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

4   non-examining professional, without other evidence, is insufficient to reject the opinion of a

5   treating or examining professional.  Lester, 81 F.3d at 831.

6        In this case, the ALJ reasonably rejected the September 27, 2012 opinion by plaintiff's

7   treating physician, Dr. Douglas Abeles, indicating that plaintiff is completely disabled and unable

8   to work even in a sedentary position, because it consists of a conclusory check-the-box form

9   unsupported by any meaningful clinical findings and medical rationale.  (AT 860-62.)  The brief

10  letter accompanying the form likewise fails to provide adequate support and reasoning for the

11  extreme limitations suggested by Dr. Abeles.  (AT 863-64.)  To be sure, the record also contains

12  copious treatment notes by Dr. Abeles, but those treatment notes are in large respects inconsistent

13  with Dr. Abeles's severe September 27, 2012 assessment, which found, *inter alia*, that plaintiff,

14  as of January 8, 2008, could only sit for 3 hours and stand for 2 hours total in an 8-hour work day.

15  (AT 860-62.)  Notably, during numerous visits in the relevant period, Dr. Abeles stated that

16  plaintiff was capable of desk work and/or that plaintiff had no limitations on the total number of

17  hours he could sit, stand, or walk, as long as he had a sit-stand option.  (See, e.g., AT 511, 525,

18  535, 541, 547, 554, 561, 564, 569, 579, 582, 585, 621.)[6]  Additionally, the September 27, 2012

19  assessment's restriction to only 3 hours of sitting is inconsistent with plaintiff's own testimony

20  that he watches about 12-16 hours of television a day, plays online poker, and took a road trip

21  with his parents to Las Vegas in 2010 to play poker.  (AT 42-45.)  Furthermore, although Dr.

22  Abeles opined that plaintiff could only occasionally lift 10 pounds, plaintiff himself thought he

23  could lift 15-20 pounds.  (AT 18, 162, 861.)  Therefore, the ALJ properly discounted Dr. Abeles's

24  opinion.

25  (6) specialization.  20 C.F.R. § 404.1527.

26  [6] Plaintiff also appears to contend that the ALJ failed to properly consider Dr. Abeles's treatment

27  notes and the various assessments contained therein.  That argument lacks merit, because even if
    the ALJ did not discuss each and every treatment visit on an individual basis, the ALJ fairly

28  summarized the treatment notes and clearly considered them in his analysis.

1     However, for the reasons discussed below, the court concludes that the ALJ failed to

2  provide specific and legitimate reasons for discounting the opinion of consultative examiner Dr.

3  Satish Sharma.  (AT 273-77.)  Dr. Sharma personally examined plaintiff on July 14, 2011.  (AT

4  273.)  Plaintiff complained of persistent low back pain, which at times radiated to his lower

5  extremities, as well as intermittent numbness of the lower extremities.  (Id.)  Upon a physical

6  examination, Dr. Sharma noted tenderness to palpation of the lumbar spine and paravertebral

7  region; pain on forward flexion at 60 degrees and extension at 20 degrees; and a positive straight-

8  leg raising test on the left, with pain and numbness of the left lower extremity at 60 degrees.  (AT

9  275.)  Dr. Sharma also documented decreased strength and sensation in the L4-5 distribution of

10  the left lower extremity.  (AT 276.)  Plaintiff was observed to walk with a limp on the left lower

11  extremity and could not do toe walking or heel walking.  (Id.)  Based on his examination, Dr.

12  Sharma diagnosed plaintiff with low back pain consistent with L5-S1 radiculopathy, status post

13  discectomy.  (Id.)  He opined that plaintiff could lift 20 pounds occasionally and 10 pounds

14  frequently; stand and walk for 4 hours per day with normal breaks; sit for 6 hours per day; and

15  bend/stoop occasionally.  (Id.)

16     In discussing Dr. Sharma's opinion, the ALJ stated:

17          I give this assessment substantial weight.  However, the part of the
           assessment restricting the claimant to four hours of standing and
18          walking is given little weight.  This is not consistent with the
           evidence in the record.  During the claimant's interview with the
19          Social Security Administration, the interviewer noted that the
           claimant had no problem sitting, standing or walking.  The
20          interviewer indicated that the claimant had no obvious physical
           difficulties (Exhibit 8E3).
21

22  (AT 17.)  The observation of a layperson, made during a relatively brief interview with the

23  claimant, is insufficient, by itself, to discount the opinion of a medical provider.  To be sure, in

24  other portions of the decision, the ALJ also references plaintiff's 5/5 motor strength at certain

25  treatment visits and his ability to go shopping and drive a car.  (AT 17.)  But the ALJ does not

26  explain why a finding of full motor strength is necessarily inconsistent with a 4-hour per day

27  walking restriction, which may be necessitated by symptoms unrelated to strength, such as pain

28  and numbness.  Also, the ALJ did not make any specific findings regarding the amount of time

1    plaintiff spent shopping and driving, and it is not implausible that a person limited to four hours

2    of standing/walking would be able to accomplish some driving and shopping.  Finally, the ALJ

3    could not rely solely on the opinion of Dr. Linder, a non-examining state agency physician who

4    opined that plaintiff could stand/walk for 6 hours per day with normal breaks, to discount Dr.

5    Sharma's opinion, particularly given that another state agency physician, Dr. Woodcock, assessed

6    plaintiff as capable of standing/walking about 2 hours per day with normal breaks.  (AT 300,

7    659.)

8         The court cannot find the ALJ's error to be harmless, because the ALJ found plaintiff

9    capable of light work with an ability to stand/walk six hours per day with normal breaks, and

10   never solicited testimony from the VE regarding plaintiff's ability to perform other work with a

11   hypothetical limitation of 4 hours of standing/walking per day.  See SSR 83-10, at *6 ("the full

12   range of light work requires standing or walking, off and on, for a total of approximately 6 hours

13   of an 8-hour workday").

14        Nevertheless, the court declines plaintiff's invitation to remand the case for an award of

15   benefits.  Generally, if the court finds that the ALJ's decision was erroneous or not supported by

16   substantial evidence, the court must follow the "ordinary remand rule," meaning that "the proper

17   course, except in rare circumstances, is to remand to the agency for additional investigation or

18   explanation."  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014).  A

19   remand for an award of benefits is inappropriate where the record has not been fully developed or

20   there is a need to resolve conflicts, ambiguities, or other outstanding issues.  Id. at 1101.

21        As an initial matter, even if Dr. Sharma's opinion is fully credited, the record does not

22   permit the court, as a matter of law, to conclude that plaintiff would necessarily be disabled

23   during all or part of the relevant period.  Further development of the record, such as supplemental

24   vocational expert testimony, would be necessary.

25        Moreover, although the ALJ's decision provided insufficient reasons for discounting Dr.

26   Sharma's opinion, there is evidence in the record that may plausibly suggest that plaintiff is

27   capable of standing/walking more than four hours per day.  By way of example, a post-surgery

28   May 11, 2009 EMG study was normal with no evidence of radiculopathy.  (AT 259-61.)  At an

1   August 2, 2011 consultative psychiatric examination, plaintiff's posture and gait were also found

2   to be within normal limits, and one of plaintiff's other treating physicians noted on December 22,

3   2011, that plaintiff had a normal posture and gait; had normal reflexes and no sensory deficits;

4   walked without any external support or devices; could walk on his heels and toes; and further

5   observed that plaintiff's subjective symptoms were moderately in excess of the objective findings.

6   (AT 280, 326.)  Because Dr. Sharma's standing/walking restriction appeared to rely in large part

7   on plaintiff's gait and symptoms of radiculopathy, the above-mentioned evidence at least

8   arguably undermines Dr. Sharma's assessment.  Although the Commissioner pointed to some of

9   that evidence in its cross-motion for summary judgment on appeal, the fact remains that the ALJ

10  did not rely on such evidence to discount Dr. Sharma's opinion.  See Pinto v. Massanari, 249 F.3d

11  840, 847-48 (9th Cir. 2001) (court may generally not affirm the denial of benefits on a ground not

12  invoked by the ALJ).

13          Therefore, in light of the ambiguities, conflicts, and outstanding issues in the record, the

14  court finds it appropriate to follow the ordinary remand rule and remand for further proceedings –

15  more specifically, for further consideration of Dr. Sharma's opinion in conjunction with the other

16  evidence in the record.  The ALJ may also further develop the record evidence, as deemed

17  appropriate.  Importantly, the court expresses no opinion regarding how the evidence should

18  ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand.  The court

19  also does not instruct the ALJ to credit any particular opinion or testimony.  The ALJ may adopt

20  Dr. Sharma's opinion in full, in part, or not at all, provided that the ALJ's decision complies with

21  applicable law and is supported by substantial evidence in the record as a whole.

22  V.     CONCLUSION

23          For the foregoing reasons, IT IS HEREBY ORDERED that:

24          1.  Plaintiff's motion for summary judgment (ECF No. 14) is GRANTED IN PART.

25          2.  The Commissioner's cross-motion for summary judgment (ECF No. 15) is DENIED.

26          3.  The action is remanded for further administrative proceedings consistent with this

27              order pursuant to sentence four of 42 U.S.C. § 405(g).

28          4.  Judgment is entered for plaintiff.

1        5.  The Clerk of Court shall close this case.

2        IT IS SO ORDERED.

3  Dated:  October 15, 2015

4

5                      KENDALL J. NEWMAN
                          UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28